# CONTINUATION OF A CRIMINAL COMPLAINT

I, Heather Williamson, being duly sworn, depose and state that:

# INTRODUCTION

1. This Continuation of a Criminal Complaint is made for the purpose of establishing probable cause that, on or about October 19, 2020, in Muskegon County, Michigan, within the Western District of Michigan, JACKIE LEE CHERRY, JR., possessed with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(viii). Because the facts set forth in this Continuation are for the limited purpose of establishing probable cause to support the Criminal Complaint, it contains only a summary of relevant facts. I have not included each and every fact known to me concerning the entities, individuals, and events described in this Continuation.

2. I am a Special Agent of the Drug Enforcement Administration ("DEA") and have been so employed since January 2013. I am currently assigned to the Grand Rapids District Office. Previously, I was assigned to the Southwest Border Initiative Group-3 ("SWB-3") and to the Los Angeles Strike Force for approximately six years. The Los Angeles Strike Force is an investigative group jointly led by the DEA and FBI, and composed of several other federal, state, and local agencies that are focused on the disruption of the Mexico-based Sinaloa Cartel. Prior to working as a DEA Special Agent, I completed 20 weeks of training at the DEA Academy in Quantico, Virginia, which included narcotics identification, detection, trafficking, and

1

interdiction; money laundering techniques; asset identification, seizure, and forfeiture; and techniques used by narcotics traffickers to avoid detection by law enforcement officials. I have investigated drug trafficking organizations in relation to violations of federal laws such as unlawful importation of controlled substances, the distribution of controlled substances, manufacturing controlled substances, and possession with intent to distribute controlled substances, including cocaine, methamphetamine, heroin, and other dangerous drugs, as well as money laundering.

3. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of narcotics proceeds, and the dialect (lingo) and coded language used by narcotics traffickers. In connection with my duties, I investigate criminal violations of the federal and state controlled substance laws including, but not limited to, conspiracy and attempt to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846; possession with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); use of communication facilities to facilitate drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); and offenses involving money laundering, conspiracy to do the same, and attempts to do the same, in violation of 18 U.S.C. §§ 1956 and 1957.

4. The statements contained in this Continuation are based in part on: (a) information provided by other federal law enforcement officers, West Michigan

Enforcement Team (WEMET) detectives, and other law enforcement officers; (b) my training and experience and the training and experience of other law enforcement agents; and (c) my review of law enforcement reports and databases.

## PROBABLE CAUSE

5. This application is based on a DEA, MSP, and Southwest Enforcement Team ("SWET") investigation into a methamphetamine distribution conspiracy in the Western District of Michigan. DEA and SWET have utilized Undercover Officers ("UC") and Confidential Sources ("CS") to conduct multiple controlled purchases of crystal methamphetamine from members of the conspiracy, which has allowed investigators to identify a Battle Creek source of supply ("SOS"), Muskegon SOS, Kalamazoo SOS, as well as connections to a multi-pound Chicago-based SOS, who is currently the lead subject of an ongoing U.S. Postal Inspection Service investigation.

6. During the investigation, investigators identified JACKIE LEE CHERRY, JR. as a Muskegon SOS via physical and electronic surveillance, CS information, and controlled purchases using a SWET CS. CHERRY's criminal history includes convictions for misdemeanor domestic violence, operating suspended/revoked license, possession of marijuana, assault and battery, 4th degree criminal sexual conduct, felony restricting/obstruction police officer, and receiving/concealing firearms.

7. On October 19, 2020, at approximately 9:28 a.m., investigators initiated surveillance on a 2018 Chevrolet Silverado bearing Michigan license plate EGV 9493. The Silverado is registered to CHERRY at 2117 Maffett Street ("Maffett Residence")

3

in the City of Muskegon Heights, Michigan. Investigators located the vehicle at the Quality Inn at 1675 East Sherman Boulevard, Muskegon. At approximately 11:15 a.m., investigators observed CHERRY driving the Silverado and travel to the Maffett Residence. Investigators maintained surveillance on the Maffett Residence after CHERRY went inside.

8. At approximately 2:10 p.m., WEMET CS[1] contacted CHERRY on 231-571-8506. CHERRY said he would sell the CS approximately 3 ounces of crystal methamphetamine for $500 per ounce. CHERRY agreed to come to the location of the CS for the drug deal.

9. Subsequently, investigators maintained surveillance on the Maffett Residence, with the assistance of air support, and observed CHERRY exit the residence and get into a 2008 Chevrolet Tahoe bearing Michigan license plate DZU 0204. The Tahoe is registered to Mary Cherry at the Maffett Residence. While driving the Tahoe, officers observed CHERRY conduct counter-surveillance, to include making several quick turns.

10. Shortly thereafter, a marked MSP Trooper initiated a traffic stop on the Tahoe driven by CHERRY for a window tint violation and based on investigators'

---

[1] CS has been a cooperating informant with WEMET since October 7, 2019. CS began cooperating with law enforcement for consideration on a pending criminal charge. As of August 24, 2020, the criminal charge was dismissed, and the CS is currently being compensated financially for his/her information. CS's criminal history includes convictions for felony malicious destruction of property, possession of cocaine, misdemeanor larceny, domestic violence, traffic violations, assault, and possession of marijuana. CS has conducted three controlled buys, ultimately resulting in the execution of one search warrant. CS has also provided intelligence and information on several Muskegon-based drug traffickers. Based on these results, WEMET believes CS to be reliable.

4

belief that CHERRY was in possession of multiple ounces of crystal methamphetamine with the intent to deliver to the CS.

11. An MSP K9 executed a sniff around the outside of the Tahoe and the K9 indicated interest at the outside of the driver's side of the vehicle. A subsequent search of the Tahoe resulted in the seizure of approximately 147 grams (over 5 ounces) of a substance that field tested positive for methamphetamine.

12. Based on my training and experience, I know that 5 ounces of methamphetamine is a distribution quantity, and based on my knowledge of the investigation and events that day, I believe CHERRY intended to distribute at least some of that methamphetamine to the CS.

## **CONCLUSION**

13. Based on the foregoing information, I believe there is probable cause to believe that, on or about October 19, 2020, in Muskegon County, Michigan, in the Western District of Michigan, JACKIE LEE CHERRY, JR. possessed with intent to distribute, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(viii).